IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARY WIGGINS,             )
                                       )
        Plaintiff,          )
                                       )
        v.                    )    Civil Action No.: 2:17cv425-SMD
                                       )
CITY OF MONTGOMERY,   )
                                       )
        Defendant.    )

## MEMORANDUM OPINION AND ORDER

On July 5, 2017, Mary Wiggins ("Plaintiff") filed a Complaint against the City of Montgomery, Alabama, ("Defendant") alleging claims of unlawful discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621, *et seq.* ("ADEA"); and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). *See* (Doc. 1). This Court's jurisdiction is proper under 28 U.S.C. § 1331.

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. 39), Plaintiff's opposition thereto (Doc. 43), and Defendant's reply (Doc. 44). Upon consideration of Defendant's Motion for Summary Judgment, the evidentiary materials filed in support thereof, and the pleadings of the parties, for the reasons set forth below, Defendant's Motion for Summary Judgment (Doc. 39) is due to be granted in part and denied in part.

# I. STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. A[] [dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion[,]" and alerting the court to portions of the record which support the motion. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is then similarly required to cite to portions of the record which show the existence of a material factual dispute. *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

## II.    STATEMENT OF FACTS

Plaintiff began working for Defendant in 1970 as a typist with the Police Department. In 1993, Defendant promoted Plaintiff to the position of Clerk III. In 1995, Defendant promoted Plaintiff to a position with Defendant's Finance Department. From 1996 to the time of her retirement in December 2015, Plaintiff worked as an Account Clerk II with the License and Revenue Division of Defendant's Finance Department. As an Account Clerk II, Plaintiff worked at the front desk in the License and Revenue office and was responsible for handling the daily activities of assisting customers, gathering information, and making determinations on what type of licenses customers needed. In 2007, Plaintiff applied for a promotion to the position of Revenue Examiner and was subsequently denied. In 2013, Plaintiff applied again for the position of Revenue Examiner and was denied again. She met the minimum qualifications to hold the position—i.e., she had a high school diploma or the equivalent thereof, and two years of delinquent account collection work.

On April 15, 2015, Plaintiff applied for one of two open Revenue Examiner positions. The Revenue Examiner job posting for the 2015 opening states that the "fundamental reason this classification exists is to enforce revenue and/or license laws and regulations." The posting notes that "[w]ork involves inspecting business premises in an assigned geographical location for violations and verifications." Under a section titled "WORKING CONDITIONS," the posting advises that "[w]ork is performed primarily in the field involving travel to and visits to local business locations, which may require

working in inclement weather, visiting construction sites, climbing stairs, walking over rough terrain, minimal lifting of boxed documents and/or laptop and printer, etc."

Similarly, the Revenue Examiner job description (which is a separate document from the Revenue Examiner job posting discussed above) states the following "essential function" of the position:

> ESSENTIAL FUNCTION: Collects revenues and enforces revenue ordinances using a computer, telephone, receipt book, collection's envelope and automobile to travel to work locations following departmental guidelines, state revenue law in order to collect delinquent revenue and ensure compliance of revenue law requirements.

Under this heading, the job description further notes that the employee will be required to "visit[ ] business establishments for collection of delinquent revenues." The job description lists another "essential function" as follows:

> ESSENTIAL FUNCTION: Visits business activities of permanent and transient businesses for enforcement of business license ordinances using a computer, calculator, citations and an automobile to travel to work locations following departmental guidelines and city ordinances relative to revenue collection in order to ensure proper business licenses have been obtained and are properly displayed and the required conditions to possess such licenses are met.

Under this heading, the job description further notes that the employee will be required to "[c]heck[ ] the computer for new businesses in the community for business licenses" and, if the business is not licensed, "make[ ] a personal visit." Finally, at the end of the job description document and outside of the section listing essential functions, the job description identifies the same working conditions listed within the job posting—i.e., that "[w]ork is performed primarily in the field involving travel to and visits to local business locations which may require working in inclement weather, visiting construction sites,

climbing stairs, walking over rough terrain, minimal lifting of boxed documents and/or laptop and printer, etc."

Plaintiff submitted her application for the 2015 Revenue Examiner positions on April 15, 2015. In her application, Plaintiff stated that, due to a right knee injury, she "use[d] a walker when walking long distances and for knee support," and that she "cannot walk out in rough terrain, as the recent job announcement goes."[1] Plaintiff sustained her knee injury in 2000 when she fell down the stairs in the parking deck after work. Since that time, Plaintiff has used a walker on a daily basis for ambulatory support. Due to the injury, Plaintiff claims that she is "limited in the major life activities of walking and breathing." Along with noting her physical limitations, Plaintiff also stated in her application that the "Finance Director advised that we could use one or two inside Revenue Examiner[s]" and that she "could benefit in working a[n] inside position." She complained within her application that she had been passed over for the position in the past due to her age and echoed the Finance Director's position that "this division needed one or two inside revenue examiners to work on sales tax," noting that her supervisor "chooses not to fill that position until years down the line." Finally, Plaintiff reiterates in the application: "And as this recent job notification states, you must be able to walk on rough terrain which I cannot do – I feel like no one[ ] cares about me and my situation."

On May 28, 2015, Plaintiff, along with four other applicants, interviewed for the two open Revenue Examiner positions with Faye Comer ("Comer"). Comer, who is the

---

[1] It is unclear to the undersigned whether the previous Revenue Examiner postings required the candidates to traverse rough terrain or if this was a new requirement for the 2015 posting.

Revenue Supervisor for the License and Revenue Division of Defendant's Finance Department, was Plaintiff's direct supervisor, and had supervisory and decision making authority with regard to interviewing, hiring, promotion, and discipline. According to Comer, Plaintiff told her during the interview that she was "limited on climbing a lot of stairs"; visiting construction sites"; "walking on rough terrain"; "walking on terrain that was not safe"; and "working in inclement weather." Comer also acknowledged that Plaintiff complained during the interview that she felt she had been discriminated against in the past due to her age. Comer was unable to recall if Plaintiff complained about disability discrimination during the interview.

On June 2, 2015, Comer recommended that Patrick Vines ("Vines") and J.C. Jones ("Jones") be promoted to fill the two vacant Revenue Examiner positions. At that time, Vines was thirty-one years old and Jones was twenty-eight. Jones had been working for Defendant for one year as an Account Clerk when he was promoted; Vines had been working for Defendant for eleven years as an Account Clerk. Neither Jones nor Vines had a visible disability. Plaintiff filed an EEOC charge on June 17, 2015, claiming discrimination based upon age, disability, and retaliation. Plaintiff also sent a letter to Defendant on June 22, 2015, which complained that she was being overlooked based upon her age and disability.

A third Revenue Examiner position became available shortly thereafter, and Comer recommended that Cheryl Urquhart ("Urquhart") fill the position on July 9, 2015. At that time, Urquhart was fifty years old, and had no visible disability. Comer filled the third vacant position from the candidates who interviewed for the original two openings.

Comer's recommendations were approved by Defendant's Finance Director, Barry Crabb ("Crabb").

On June 22, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging that she was denied promotion to the position of Revenue Examiner due to her age, disability, and in retaliation for filing previous EEOC complaints. After concluding its investigation, the EEOC found that "there were accommodations that were available to allow [Plaintiff] to perform the functions of the Revenue Examiner." The EEOC based this determination upon evidence that "two persons hired into the Revenue Examiner position . . . have not performed duties in the field environment; one of whom is still employed." Accordingly, the EEOC determined that there was "reasonable cause to conclude that [Plaintiff] was discriminated against on the basis of retaliation, in violation of Title VII, age, 73, in violation of the ADEA and disability in violation of the ADA."

Plaintiff retired from her employment with Defendant on April 15, 2015.

IV.    **DISCUSSION**

Plaintiff's Complaint alleges that Defendant discriminated against her based upon her age and upon her alleged disability and retaliated against her based upon her complaints of age and disability discrimination. *See generally* (Doc. 1). Plaintiff attempts to prove her claims via direct and circumstantial evidence. *See generally* (Doc. 43).

In the context of employment discrimination and retaliation cases, direct evidence is "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Wilson v. B/E Aerospace,*

*Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004). Direct evidence is "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption." *Burrell v. Bd. of Trs. of Ga. Military Coll.,* 125 F.3d 1390, 1393 (11th Cir. 1997). Eleventh Circuit precedent illustrates that "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of" some impermissible factor constitutes direct evidence of discrimination. *Rojas v. Florida,* 285 F.3d 1339, 1342 n. 2 (11th Cir. 2002). To qualify as direct evidence, the evidence must reflect "'a discriminatory . . . attitude correlating to the discrimination . . . complained of by the employee,' and must indicate that the adverse employment decision was motivated by the decision-maker's intent to discriminate." *Lawson v. Plantation Gen'l Hosp.,* 704 F. Supp. 2d 1254, 1267, n. 9 (S.D. Fla. 2010) (internal citations and quotations omitted); *see also Jones v. Bessemer,* 151 F.3d 1321, 1323 n. 11 (11th Cir. 1998) (noting that the 11th Circuit has severely limited what statements constitute direct evidence) (citing *Evans v. McClain of Ga., Inc.,* 131 F.3d 957, 962 (11th Cir. 1997)). If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence. *See Burrell,* 125 F.3d at 1393.

Absent direct evidence, claims for illegal discrimination and/or retaliation may be proved via circumstantial evidence, which are analyzed pursuant to the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (applying *McDonnell Douglas* to ADA case); *Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000) (applying *McDonnell Douglas* to ADEA case); *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (applying *McDonnell Douglas* to Title VII retaliation

claim). Under the *McDonnell Douglas* framework, a plaintiff must first create a presumption of discrimination by establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for its employment action. *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000). Although this burden is not "onerous," *Tex. Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 253 (1981), neither is it a mere formality. A defendant may not satisfy its burden by presenting a hypothetical reason for the employment decision in question; instead, it must raise "a genuine issue of fact as to whether it discriminated against the plaintiff" by making that decision. *Id.* at 255. In other words, "the defendant must clearly set forth, through the introduction of admissible evidence," the reason for its adverse employment decision, and that reason "must be legally sufficient to justify a judgment for the defendant." *Id.; see also Trotter v. Bd. of Trustees of the Univ. of Ala.,* 91 F.3d 1449, 1455 (11th Cir. 1996).

If the defendant produces a legitimate, non-discriminatory reason for its employment action, the burden shifts back to the plaintiff to "prove that the reason provided by [the employer] is a pretext for unlawful discrimination." *Holmes v. Ala. Bd. of Pardons & Paroles,* 591 F. App'x 737, 742 (11th Cir. 2014). The plaintiff may demonstrate pretext by "revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the employer's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (per curiam) (internal

quotation marks omitted). To establish that an employer's asserted reason was pretextual, a plaintiff must show both that the stated reason was false *and* that discrimination was the real reason. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 (1993). If the proffered reason is one that might motivate a reasonable employer to make an employment decision, the plaintiff must "meet [the reason] head on and rebut it" instead of merely quarreling with it. *Wilson*, 376 F.3d at 1088. The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs or "reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Developers*, 610 F.3d 1253, 1266 (11th Cir. 2010). Further, a plaintiff bringing a disparate treatment claim under the ADA or the ADEA must also prove that age or disability was the "but-for" cause of the adverse employment action, not merely one motivating factor. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (ADEA); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1073 (11th Cir. 1996) (ADA).

## A. Plaintiff's ADEA Discrimination Claim (Count II)

The ADEA prohibits employers from discriminating against an employee who is at least forty years of age because of that employee's age. 29 U.S.C. §§ 623(a)(1), 631(a). As noted above, "[a] plaintiff can establish age discrimination through either direct or circumstantial evidence." *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). Here, Plaintiff has not presented the Court with direct evidence of age discrimination. Therefore, Plaintiff must proceed under the burden-shifting framework provided in *McDonnell Douglas. Giraldo v. Miami Dade Coll.*, 739 F. App'x 572, 572 (11th Cir. 2018) (unpublished) ("We evaluate ADEA claims based on circumstantial evidence of

10

discrimination under the burden-shifting framework established in *McDonnell Douglas*[.]").

To establish a prima facie case of age discrimination, a plaintiff must show four things: "(1) that she was a member of the protected group of persons between the ages of forty and seventy; (2) that she was subject to adverse employment action; (3) that a substantially younger person filled the position that she sought or from which she was discharged; and (4) that she was qualified to do the job for which she was rejected." *Damon v. Fleming Supermarkets of Fla. Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999). For purposes of summary judgment, Defendant concedes that Plaintiff is able to establish a prima facie case of age discrimination. *See* (Doc. 39) at 15.

Thus, the burden shifts to Defendant to produce a legitimate, non-discriminatory reason for its employment decision to not promote Plaintiff to the Revenue Examiner position. Here, Defendant provides the following reasons for its decision: (1) Plaintiff's supervisors, Comer and Wilson, were "very familiar with [Plaintiff's] qualifications and work history, and were able to consider their daily observations of her" to determine that "Plaintiff was not among the most qualified applicants for the position"; and (2) Plaintiff's admissions on her written application and during her interview that "she could not perform certain requirements of the position, including climbing a lot of stairs, visiting construction sites, and walking on rough or unsafe terrain," made her less qualified than the candidates who received promotions. (Doc. 39) at 16-17.

Plaintiff disputes the legitimacy of Defendant's proffered reasons and, therefore, argues that Defendant has failed to meet its intermediate burden of production. (Doc. 43)

at 35-37. Specifically, Plaintiff asserts that Defendant's reliance upon Wilson's testimony as justification for the employment decision is "speculative and not based on first-hand knowledge" because Wilson was not the decision-maker for the Revenue Examiner position. *Id*. at 37. Similarly, Plaintiff asserts that Defendant's reliance upon Comer's testimony as justification for the employment decision is insufficient because Defendant offers no evidence that Comer *actually* made her decision based upon that reasoning. *Id*.

The undersigned finds Plaintiff's arguments unpersuasive and concludes that Defendant has met its burden to produce a legitimate, non-discriminatory reason for its employment decision. Assuming that Wilson's reasoning should not be considered because he was not a decision-maker, Comer's reasoning provides Defendant with a legitimate, non-discriminatory reason for its employment decision. As a basis for her decision to hire individuals other than Plaintiff, Comer testified that she had, on occasion, observed Plaintiff requiring assistance in her previous role as Account Clerk II. (Doc. 39-4) at 19. Specifically, Comer testified that Plaintiff had difficulties remembering some of the information required to perform certain tasks in her previous role and that she would need assistance performing some of her job responsibilities. *Id*. Comer further testified that Plaintiff reported during the interview and on her employment application that she was unable to perform certain functions of the job as listed. *Id*. at 17-19.

In contrast, Comer testified that she promoted Vines because he was "well-prepared"; "a competent applicant"; "was well-versed in the ordinance[s] and statutes"; "had a great rapport with the customers"; and "was able to physically perform the job as written." (Doc. 39-4) at 24. As for Jones, Comer testified that she promoted him because

she "felt that he was more qualified at that time under the circumstances and as the current job was written, especially under the working conditions." *Id*. at 17. Comer continued that she believed Jones "could better perform [the Revenue Examiner] position with the requirements" because "[h]e was able to physically perform the job in terms of the working conditions." *Id*. As to Urquhart, Comer testified that she promoted her because "she would be able to perform the duties and responsibilities of that position" and that she had observed her work at the front counter and with dealing with customers, and was confident that Urquhart was able to "retain[ ] the information and would be able to not need as much assistance" as Plaintiff. *Id*. at 30-31.

Comer's testimony supports Defendant's assertion that Plaintiff was not promoted because her supervisor had previously observed her work and found it lacking, and because Plaintiff was unable to perform some of the physical requirements of the position. Accordingly, the undersigned finds that Defendant, based upon Comer's statements regarding Plaintiff's previous work performance and her inability to perform the job requirements as listed, has produced a legitimate, non-discriminatory reason for its employment decision to not promote Plaintiff to the Revenue Examiner position. *See e.g. Anderson v. Coors Brewing*, 181 F.3d 1171, 1180 (10th Cir. 1999) (finding that inability to perform an essential job function is a legitimate, nondiscriminatory reason for an employee's termination).

Because Defendant has produced a legitimate, non-discriminatory reason for its employment decision, Plaintiff must now meet her burden of persuasion that Defendant's proffered reason for its failure to promote Plaintiff is pretext for discrimination.

Importantly, because the ADEA does not authorize a "mixed-motives" age discrimination claim, this Court must apply a "but-for" causation standard to determine whether Plaintiff has produced sufficient evidence that Defendant's employment decision would not have occurred but-for Defendant's consideration of Plaintiff's age. *Archie v. Home-Towne Suites, LLC*, 749 F. Supp. 2d 1308, 1315 (M.D. Ala. 2010) (citing *Gross*, 557 U.S. at 177-78). In other words, the ADEA requires that "age [be] the 'reason' that [Defendant] decided to act." *Gross*, 557 U.S. at 176. Thus, even if Plaintiff establishes a prima facie case of age discrimination and offers sufficient evidence of pretext as to Defendant's proffered reason for its employment decision, summary judgment may still be available to Defendant if Plaintiff is unable to show but-for causation. *Archie,* 749 F. Supp. at 1314 (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000).

Assuming, *arguendo*, that Plaintiff can show that Defendant's proffered reason is pretext for discrimination, Plaintiff's age discrimination claim still fails because Plaintiff has neither argued nor pointed the Court to any evidence that age was the but-for cause of Defendant's failure to promote her. As best the undersigned can tell, Plaintiff's only evidence that suggests age could have played a factor in Defendant's decision to not promote her is that the 2015 Revenue Examiner positions were filled by individuals who were substantially younger than she (two of the three were under the age of forty).[2]

---

[2] *See Carter v. DecisionOne Corp Through C.T. Corp*., 122 F.3d 997 (11th Cir. 1997) (explaining that the Eleventh Circuit has found a three-year age difference to be "legally significant for ADEA purposes"); *Carter v. City of Miami*, 870 F.2d 578, 582-83 (11th Cir. 1989) (finding that a prima facie ADEA case was established when a 49-year-old plaintiff was replaced by a 46-year-old woman).

However, without more, this circumstantial evidence is insufficient to show that age discrimination was the real reason Plaintiff was not promoted.

In reaching this conclusion, the Court notes the complete absence of evidence that Plaintiff's age was ever considered during the hiring process or ever referenced as an impediment by any decision maker at any point during Plaintiff's employment tenure. There is no evidence that Plaintiff was ever questioned about her age or her ability to perform the requirements of the job because of her age. Nor is there evidence that Defendant's decision makers ever made disparaging comments about advanced age in any setting. Despite drawing all factual inferences in Plaintiff's favor, it is clear that she has not supported her age discrimination claim with sufficient evidence to allow a reasonable factfinder to conclude that her age was the but-for cause of Defendant's employment decision. *See Collins v. Compass Grp., Inc*., 965 F. Supp. 2d 1321, 1339 (N.D. Ala. 2013) (noting that the plaintiff did not "present arguments or evidence showing that age was the but-for cause for the adverse employment action taken against him"). Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's ADEA discrimination claim is due to be granted.

**B. Plaintiff's ADA Discrimination Claim (Count I)**

Plaintiff claims that Defendant has discriminated against her in violation of the ADA based upon its failure to accommodate her and based upon its failure to promote her. (Doc. 43) at 47-55. The undersigned will address each theory of discrimination, in turn.

### 1. Failure-to-accommodate

"The ADA prohibits an employer from discriminating against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (citing 42 U.S.C. § 12112(a)). To state a *prima facie* failure-to-accommodate claim under the ADA, a plaintiff must show that: (1) she is disabled; (2) she is a qualified individual; and (3) she was discriminated against by way of the defendant's failure to provide a reasonable accommodation. *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255-56 (11th Cir. 2007). With regards to the third prong, discrimination includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B). Thus, an employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is "otherwise qualified," and unless the employer can show undue hardship. *Holly*, 492 F.3d at 1262 (11th Cir. 2007). In a failure-to-accommodate claim, evidence of pretext plays no role in the analysis of whether summary judgment should be granted. *See id.* ("There is no additional burden on [the plaintiff] to show that [the employer] enforced its punctuality policy in a discriminatory manner by granting leniency under the policy to [the plaintiff's] non-disabled co-workers while denying [the plaintiff] the same leniency,

nor any subsequent burdens on [the employer] to show that it had 'any legitimate non-discriminatory reasons for terminating [the plaintiff]' or on [the plaintiff] to 'establish that these reasons were pretextual.'").

### a. Element 1: Whether Plaintiff is disabled under the ADA.

Defendant concedes that Plaintiff can establish that she is disabled within the meaning of the ADA. (Doc. 44) at 9 (stating that "accepting as true (as it must) the facts as Plaintiff presents them, and for purposes of summary judgment only, Plaintiff is able to establish that she is disabled within the meaning of the ADA"). Therefore, the undersigned will presume, for the purposes of summary judgment, that Plaintiff has a disability under the ADA.

### b. Element 2: Whether Plaintiff is a "qualified individual" under the ADA.

In its reply, Defendant argues for the first time that Plaintiff is not a "qualified individual" under the ADA because she cannot perform the essential functions of the Revenue Examiner position with or without reasonable accommodation. (Doc. 44) at 9. Although Defendant's argument was raised in reply, the undersigned will address it nonetheless.[3]

---

[3] In the usual case, a party opposing a newly-raised issue within a reply brief will move the court to file a sur-reply. Because of the opportunity to file a sur-reply, the proper course for the court is to allow new arguments to be raised in reply briefs, but to grant the opposing party leave to file a sur-reply rather than refusing to reach valid arguments. *See, e.g., First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 788 (11th Cir. 2008) ("A district court's decision to permit the filing of a sur-reply is purely discretionary and should generally only be allowed when a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief.") (internal citations omitted).

A "qualified individual" under the ADA is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To be a "qualified individual," then, a plaintiff "must show either that [s]he can perform the essential functions of h[er] job without accommodation, or, failing that, show that [s]he can perform the essential functions of h[er] job with a reasonable accommodation." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).

The ADA's implementing regulations provide that "[t]he term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires," and "does not include the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). "Whether a function is essential is evaluated on a case-by-case basis by examining a number of factors." *Davis,* 205 F.3d at 1305. Factors to consider include: the amount of time spent on the job performing the function; the consequences of not requiring the incumbent to perform the function; the work experience of past incumbents in the job; and the current work experience of incumbents in similar jobs. *Id.* (citing 29 C.F.R. § 1630.2(n)(3)). The ADA regulations further contemplate that a job function may be deemed essential if: "(1) the reason the position exists is to perform the function; (2) there are a limited number of employees available among whom the performance of the job function can be distributed; and (3) the function is highly specialized so that the incumbent in the position was hired for his or her expertise or ability to perform the particular function." *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 (11th Cir. 1997) (citing 29 C.F.R. § 1630.2(n)(2) (1996)). Also important for consideration

is "the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *see also Holbrook,* 112 F.3d at 1526.

Here, there are two documents that set forth Defendant's position on the "essential functions" of the Revenue Examiner position.[4] First, the job posting for the Revenue Examiner position states: "The fundamental reason this classification exists is to enforce revenue and/or license laws and regulations. Work involves inspecting business premises in an assigned geographical location for violations and verifications. Work will include examination and verification of revenue and/or license receipts from businesses operating in Montgomery[.]" (Doc. 42-14) at 2; (Doc. 42-15) at 2. The posting describes the working conditions as follows: "Work is performed primarily in the field involving travel to and visits to local business locations which may require working in inclement weather, visiting construction sites, climbing stairs, walking over rough terrain, minimal lifting of boxed documents and/or laptop and printer, etc[.]" (Doc. 42-14) at 2-3; (Doc. 42-15) at 3.

Second, the Revenue Examiner job description states the following "essential function" of the Revenue Examiner position:

> ESSENTIAL FUNCTION: Collects revenues and enforces revenue ordinances using a computer, telephone, receipt book, collection's envelope and automobile to travel to work locations following departmental guidelines, state revenue law in order to collect delinquent revenue and ensure compliance of revenue law requirements.

---

[4] Notably, both documents were prepared by Defendant prior to its decision to not promote Plaintiff.

(Doc. 39-5) at 54. Under this heading, the job description further notes that the employee

will be required to "visit[ ] business establishments for collection of delinquent revenues."

*Id*. The job description states another "essential function" as follows:

> ESSENTIAL FUNCTION: Visits business activities of permanent and
> transient businesses for enforcement of business license ordinances using a
> computer, calculator, citations and an automobile to travel to work locations
> following departmental guidelines and city ordinances relative to revenue
> collection in order to ensure proper business licenses have been obtained and
> are properly displayed and the required conditions to possess such licenses
> are met.

*Id*. at 55. Under this heading, the job description notes that the employee will be required

to "[c]heck[ ] the computer for new businesses in the community for business licenses"

and, if the business is not licensed, "make[ ] a personal visit." *Id*. Finally, at the end of the

document and outside of the section listing essential functions, the job description identifies

the same working conditions listed within the job posting—i.e., that "[w]ork is performed

primarily in the field involving travel to and visits to local business locations which may

require working in inclement weather, visiting construction sites, climbing stairs, walking

over rough terrain, minimal lifting of boxed documents and/or laptop and printer, etc." *Id*.

at 58.

   The summary judgment evidence suggests that Plaintiff could perform the essential

functions of the job with reasonable accommodation. The summary judgment evidence

suggests that actually conducting site visits as a Revenue Examiner is not as "essential" as

Defendant's job posting and job description seem to suggest. Indeed, Jones, who filled a

2015 Revenue Examiner position, testified that the requirements of the position were

altered "all the time." Further, the EEOC site visit determined that, as of eleven months

into the job, two of the individuals promoted to Revenue Examiner had yet to conduct a site visit or leave the office for field duty. Additionally, the evidence shows that Urquhart and Rowe were working, for all intents and purposes, as "inside" Revenue Examiners, which is exactly the type of accommodation Plaintiff requested. This supports the conclusion that Plaintiff could perform the essential functions of the Revenue Examiner position with reasonable accommodation and, therefore, is a qualified individual under the ADA.

Accordingly, construing the evidence in the light most favorable to Plaintiff, the Court finds that there are disputes of material fact as to what the essential functions of the Revenue Examiner position are and whether Plaintiff is a "qualified individual" under the ADA.

### c. Element 3: Whether Plaintiff was discriminated against by way of Defendant's failure to reasonably accommodate her.

As previously noted, failure to reasonably accommodate a qualified individual with a disability is itself discrimination under the ADA. *Holly*, 492 F.3d at 1262. Reasonable accommodations may include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). When determining if an accommodation can be made, an employer is not required to accommodate an employee in any manner in which that employee desires. *Stewart v. Happy Herman's Cheshire Bridge,*

*Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997). Indeed, an employer is not required to reallocate

job duties in order to change the essential function of the job, nor is the employer required

to remove another employee from a position in order to accommodate a disabled employee.

*Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000); *Lucas*, 257 F.3d at 1256.

Further, while an employer may be required to restructure a particular job by altering or

eliminating marginal functions, the employer is not required to transform a position into

another one by eliminating its essential functions. *Lucas*, 257 F.3d at 1260. A plaintiff

bears the burden of identifying an accommodation and demonstrating that the

accommodation allows her to perform the job's essential functions.[5] *Id*. at 1255.

Plaintiff requested that Defendant accommodate her by allowing her to perform an

"inside" Revenue Examiner position. As discussed more fully in the previous section,

Plaintiff has set forth evidence that could raise a reasonable juror's suspicion as to whether

performing site visits, particularly the kind in which Plaintiff's physical limitations are

challenged, is an essential function of the Revenue Examiner position. Specifically, the

---

[5] An employer's duty to provide a reasonable accommodation is not triggered unless the plaintiff makes a specific demand for an accommodation. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999). If a specific demand is made, the ADA provides that, to determine the appropriate reasonable accommodation, an employer may need "to initiate an informal, interactive process with the individual with a disability in need of an accommodation" to identify the person's limitations and potential reasonable accommodations. 29 C.F.R. § 1630.2(o)(ii)(3). The Eleventh Circuit has not determined the precise form the request for a reasonable accommodation from an employee must take. *Holly,* 492 F.3d at 1261 n. 14. However, it has indicated that "for a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [employer] to make appropriate inquiries about the possible need for an accommodation." *United States v. Hialeah Hous. Auth.,* 418 F. App'x 872, 876 (11th Cir. 2011) (per curiam) (internal quotation marks omitted). Defendant has not argued that Plaintiff failed to make a specific demand for accommodation, and the undersigned finds no reason to find otherwise.

undersigned considers the evidence that Urquhart had not performed any field work outside the Revenue Office within the first eleven months of her employment; the evidence that Rowe "would spend her time in the office and only go out as needed"; and the evidence that the Revenue Examiner job description "is altered all the time." This evidence leads the Court to find that there is a dispute of material fact as to whether Defendant could have accommodated Plaintiff by allowing her to work an "inside"' Revenue Examiner position.

Accordingly, construing the evidence in the light most favorable to Plaintiff, the Court finds that there is a dispute of material fact as to whether Defendant failed to reasonably accommodate Plaintiff's disability.

### d. Conclusion

Because there are disputes of material fact as to whether Plaintiff is a qualified individual under the ADA (element two of a prima facie failure-to-accommodate claim) and whether Defendant failed to reasonably accommodate her disability (element three of a prima facie failure-to-accommodate claim), Defendant's motion for summary judgment as to Plaintiff's ADA failure-to-accommodate claim should be denied.

### 2. Disparate Treatment based upon Failure to Promote

Plaintiff asserts that Defendant discriminated against her in violation of the ADA when it failed to promote her to the position of Revenue Examiner because of her disability. (Doc. 1) at 10. Plaintiff asserts that she has direct evidence establishing this violation. Namely, Plaintiff points to Comer's testimony that she promoted Vines, Jones, and Urquhart because of their physical abilities compared to Plaintiff. (Doc. 43) at 47. Further, Plaintiff points to Defendant's statement to the EEOC during its investigation of Plaintiff's

discrimination complaint that Plaintiff was not promoted because the Revenue Examiner position required walking on rough terrain, which Plaintiff indicated in her application and during her interview that she was unable to do. *Id*. Plaintiff argues that these statements do not require inferences to conclude that Plaintiff's disability motivated Defendant not to promote her. *Id*.

The Court does not agree. To be sure, Comer considered Plaintiff's physical ability to perform the job functions listed for the Revenue Examiner position when making the decision to promote. In so doing, Comer concluded that the other candidates were more qualified to perform the physical demands of the job than Plaintiff. However, Comer's consideration of Plaintiff's physical ability to perform the job of Revenue Examiner is not the same as Comer denying Plaintiff the promotion to Revenue Examiner *because* of her disability. *But see Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1190 (11th Cir. 1997) (noting that "the quintessential example of direct evidence would be a management memorandum saying, 'Fire Earley-he is too old.'" (quoting *Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990))). Comer's justification—that Plaintiff admittedly would have trouble performing some of the physical requirements of the position—does not reflect a discriminatory attitude correlating to disability discrimination, nor does it indicate that Comer's decision was motivated by her intent to discriminate against Plaintiff *because* of her disability. Instead, Comer's statement reflects her concern that Plaintiff's physical limitations would prevent her from performing certain requirements of the job. The distinction is fine, but important.

Having determined that Plaintiff has not provided the Court with direct evidence of discrimination based upon disability, Plaintiff may still survive summary judgment by navigating the *McDonnell Douglas* framework. This requires Plaintiff to establish a prima facie case of disability discrimination, which requires her to show that: (1) she is disabled; (2) she was a "qualified individual"; and (3) she was not promoted because of her disability. *See Reed v. Heil Co.,* 206 F.3d 1055, 1061 (11th Cir. 2000). In the context of a disability discrimination claim based upon failure to promote, Plaintiff must show that she was qualified for the position but that someone without a disability was given the position. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998) (setting forth the elements of a prima facie case of discriminatory failure to promote in a Title VII claim); *Fodor v. E. Shipbuilding Grp.*, 2014 WL 1478845, at *9 (N.D. Fla. April 15, 2014) ("Although the Eleventh Circuit has not specifically outlined the requirements for a prima facie case of failure to promote under the ADA, other circuits have found that the failure-to-promote framework under Title VII offers guidance for such ADA cases.").

As set forth more fully above, the undersigned finds that, for the purposes of summary judgment, Plaintiff is disabled as defined by the ADA. The undersigned also finds that there is a genuine issue of material fact as to whether Plaintiff is a qualified individual under the ADA. Thus, the undersigned turns to address the remaining element of a prima facie failure-to-promote claim: whether Plaintiff has shown that, despite being qualified for the position, the position was awarded to someone without a disability.

The summary judgment evidence shows that neither Jones, Vines, nor Urqhart had a visible disability. Further, the summary judgment evidence shows that Plaintiff met the

minimum qualifications for the Revenue Examiner position as she held a high school diploma and two years of delinquent account collection work. Accordingly, the undersigned finds that Plaintiff has satisfied the third prong of a failure-to-promote claim and has therefore met her burden of setting forth a prima facie case of disability discrimination.

The burden now shifts to Defendant to articulate a legitimate, non-discriminatory reason for not promoting Plaintiff to the Revenue Examiner position. As set forth more fully in the previous section addressing Plaintiff's ADEA claim, the undersigned finds that Defendant has articulated a legitimate, non-discriminatory reason for not promoting Plaintiff to the Revenue Examiner position. Thus, under the *McDonnell Douglas* framework, the burden shifts back to Plaintiff to show that Defendant's proffered reason was a pretext for disability discrimination. Plaintiff must show that her disability was the but-for cause of Defendant's decision not to promote her.

Plaintiff's argument regarding pretext is three-fold.[6] First, Plaintiff argues that a jury could find pretext because Defendant has offered "inconsistent reasons" for its failure to promote her to the position of Revenue Examiner. (Doc. 43) at 37-39. To that point, Plaintiff asserts that, in September 2015, Defendant told the EEOC that it did not promote Plaintiff to a vacant Revenue Examiner position because she used a walker and because

---

[6] The undersigned did not address whether Plaintiff established pretext in the context of her ADEA claim. This is because the undersigned found that, regardless of whether Plaintiff could show pretext, there was a complete lack of evidence showing that Plaintiff's age was the but-for cause of Defendant's employment decision. However, unlike Plaintiff's ADEA claim, the undersigned does not find that there is a complete lack of evidence that Plaintiff's disability was the but-for cause of Defendant's employment decision. Therefore, the undersigned will first address whether Plaintiff has cleared the hurdle of demonstrating pretext as to Defendant's proffered reasons for its employment decision.

the job required her to walk on rough terrain. *Id*. at 38. Notably absent from its representation to the EEOC, Plaintiff argues, is Defendant's additional reason for not promoting Plaintiff—i.e., her supervisor's negative impressions of her performance of her previous duties as an Account Clerk II. *Id*. This omission, according to Plaintiff, suggests pretext on the part of Defendant. *Id*.

The undersigned disagrees that Defendant's additional reasoning shows pretext. "Evidence that an employer had additional reasons for terminating an employee, even if those reasons were undisclosed, does not prove pretext." *Phillips v. Aaron Rents, Inc*., 262 F. App'x 202, 210 (11th Cir. 2008) (citing *Tidwell v. Carter Prods*., 135 F.3d 1422, 1428 (11th Cir. 1998)). "If an employer offers different reasons for terminating an employee, those reasons must be fundamentally *inconsistent* in order to constitute evidence of pretext." *Phillips*, 262 F. App'x at 210 (emphasis added). Here, the reasons given by Defendants—i.e., that Plaintiff could not perform the physical requirements of the job and that Plaintiff had job performance issues—are not fundamentally inconsistent with each other. Therefore, Plaintiff has not shown pretext based upon the fact that Defendant offered an additional reason for its employment decision.

Second, Plaintiff argues that Defendant's reasons—i.e., Plaintiff's "poor performance as a clerk and inability to walk on rough terrain"—"are disputed and therefore pretextual." (Doc. 43) at 38. Plaintiff points to her previous job evaluations, signed by Comer and Wilson, which indicate that she met expectations and warranted a merit raise. *Id*. at 38-39. Construing this evidence in the light most favorable to Plaintiff, a reasonable

juror could infer pretext from Defendant's lack of evidence establishing Plaintiff's performance issues.

Third, Plaintiff argues that the evidence showing that Urquhart "did not go into the field," along with the evidence that the Revenue Examiner's job description was "altered all the time," indicates that the denial of the promotion to Plaintiff because she could not use her walker on uneven terrain was pretextual. *Id*. at 39. Construing this evidence in the light most favorable to Plaintiff, a reasonable juror could infer pretext from this evidence.

The undersigned further finds that Plaintiff has produced sufficient evidence to raise a genuine issue of material fact as to whether her disability was the but-for cause of Defendant's decision to not promote her. Defendant's statements that it did not hire Plaintiff because she was unable to perform certain physical requirements of the job could indicate but-for causation considering Plaintiff's evidence that those physical requirements were not essential functions of the job. Unlike the lack of evidence showing a discriminatory animus for Plaintiff's age, the undersigned finds that a reasonable juror could conclude that there is evidence of a discriminatory animus as to Plaintiff's physical disability. Therefore, the undersigned finds that Plaintiff has raised a genuine issue of material fact as to whether Defendant's purported reasons for not promoting her to Revenue Examiner are pretextual and the but-for cause of Defendant's employment decision. Accordingly, Defendant's motion for summary judgment as to Plaintiff's ADA discrimination claim based upon failure to promote should be denied.

## C. Plaintiff's ADEA, ADA, & Title VII Retaliation Claims (Counts III and IV)

Plaintiff asserts a claim for retaliation in violation of Title VII and the ADA, as well as a claim for retaliation in violation of the ADEA. (Doc. 1) at 13-16. In general, the ADEA, the ADA, and Title VII prevent an employer from retaliating against an employee because the employee opposes any unlawful employment practices or because the employee has made a charge, testified, assisted, or participated in any manner related to an unlawful employment practice. *See generally* 42 U.S.C. § 2000e-3(a) (Title VII); 42 U.S.C. § 12203(a) (ADA); 29 U.S.C. § 623(d) (ADEA). Absent direct proof of retaliation, the *McDonnell Douglas* burden-shifting framework is employed. *Thomas v. Dolgencorp, LLC*, 645 F. App'x 948, 950 (11th Cir. 2016) (ADA); *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (Title VII); *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (ADEA). A plaintiff must show "but-for" causation to survive summary judgment on retaliation claims. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 352 (2013) (Title VII's private-sector retaliation provision requires a but-for, rather than a motivating-factor, causation standard); *Gross,* 557 U.S. at 176-77 (the provision of the ADEA applicable to private-sector employees precludes application of a motivating-factor standard); *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016) (noting that but-for causation must be established in an ADA retaliation claim).

Plaintiff asserts that she has direct evidence that Defendant retaliated against her because of her previous age and/or disability discrimination complaints. Plaintiff cites to

Comer's deposition, in which she testified to the following regarding her interview with

Plaintiff for the Revenue Examiner position:

> Q. . . . what made Mr. Vines better prepared than [Plaintiff], if anything?
>
> A. Well, for one thing, Mr. Vines did not do a lot of complaining in the interview. I think [Plaintiff] spent a lot of time complaining about past administrations and different things that had occurred to her. So I would constantly have to bring us back to the interview questions.
>
> . . .
>
> Q. And that was a factor in determining that Mr. Vines was better prepared or interviewed better than her?
>
> A. It was not a factor, but it was definitely — it was something that I had to contend with in the interview.
>
> Q. Well, and you noted for Mr. Jones that he interviewed well. The fact that Mr. Jones didn't complain about past discrimination, is that why he interviewed better than Ms. Wiggins?
>
> A. No. I also thought that he was quite capable in carrying out the job duties and the responsibilities, as Mr. Vines was.
>
> Q. That's not my question, though. You wrote Mr. Jones — you said interviewed well. And my question was: Is the fact that Mr. Jones interviewed well, was that because he didn't complain of discrimination or past wrongs in his interview?
>
> A. No, that was not my answer.
>
> Q. But you said that Ms. Wiggins didn't interview as well as them, because she was making complaints about things that had happened in the past.
>
> A. I did not say that she did not interview as well. I said that was a part of the interview process.
>
> Q. But it was something you saw as a negative?
>
> A. Well, it was a distraction.

Q. And that's a negative?

A. It was a distraction.

(Doc. 39-4) at 90-92.

The undersigned does not find that this is direct evidence of retaliation. Comer testified that Vines interviewed well because, unlike Plaintiff, Vines did not require her to redirect the interview back to the interview questions. Determining that candidates interview well because they do not require redirection to the questions posed does not show discriminatory intent. This holds true even if the redirection was required because a candidate chose to voice concerns of discrimination.

Having determined that Plaintiff has not provided direct evidence of retaliation, the undersigned turns next to whether Plaintiff can navigate the *McDonnell Douglas* framework. In order to survive summary judgment, Plaintiff must first establish a prima facie case of retaliation. To do so, she must show that: (1) she engaged in statutorily protected conduct; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (setting forth requirements of prima facie case of retaliation under Title VII); *Stewart*, 117 F.3d at 1287 (setting forth requirements of prima facie case of retaliation under the ADA); *Bass v. Bd. of Cty. Comm'rs*, 256 F.3d 1095, 1117 (11th Cir. 2001) (setting forth requirements of prima facie case of retaliation under the ADEA).

Defendant concedes that Plaintiff can show that she engaged in protected activity and that she suffered an adverse employment action. (Doc. 39) at 20. Defendant challenges, however, Plaintiff's ability to demonstrate "that her EEOC charges and the hiring decisions were related." *Id.* Accordingly, the undersigned will address only whether Plaintiff has established a causal connection between her protected activity and Defendant's failure to promote her to the Revenue Examiner position.

Defendant argues that Plaintiff has not established causation because she has not shown that "Comer and/or the Mayor had knowledge of her prior EEOC charges relating to her promotion to the Revenue Examiner position." (Doc. 39) at 20. Plaintiff responds that she has established causation based upon the temporal proximity of Defendant's adverse employment actions and her protected activity. (Doc. 43) at 45-46.

The burden of causation can be met by showing close temporal proximity between statutorily protected activity and adverse action. *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007). But mere temporal proximity, without more, must be "very close." *Id.* (quotations omitted) (holding that a three to four-month disparity between the statutorily protected expression and the adverse employment action was not enough). The Eleventh Circuit has held that "a period as much as one month between the protected expression and the adverse action is not too protracted" to satisfy the causation element. *Higdon v. Jason*, 393 F.3d 1211, 1220 (11th Cir. 2004) (citing *Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453, 1457 (11th Cir. 1998)).

Here, Plaintiff engaged in protected activity by filing EEOC charges on April 28, 2010, *see* (Doc. 42-3); April 12, 2012, *see* (Doc. 42-4); and March 24, 2013, *see* (Doc. 42-

5). All of Plaintiff's EEOC charges alleged that she was discriminated against based upon retaliation, age, and disability. *See id.* Plaintiff also made internal complaints of age discrimination during her interview with Comer, which occurred on May 28, 2015, and on her job application, which was submitted on April 15, 2015.[7] *See* (Doc. 39-4) at 50. The original two Revenue Examiner positions were filled on June 2, 2015. (Doc. 39-4) at 71. On June 17, 2015, Plaintiff filed an EEOC charge alleging discrimination based upon age, disability, and retaliation. *See* (Doc. 42-6). Plaintiff also sent a letter to Defendant on June 22, 2015. (Doc. 26). Plaintiff's letter voiced complaints about age and disability discrimination, as well as complaints about retaliation. *See id.* (noting Plaintiff's complaints that she "has repeatedly attempted to obtain advancement in her department, but employees younger than her, without a disability, or a different gender[,] and/or who have not filed EEOC Charges have been promoted ahead of her"). The letter attached her 2015 EEOC charge. *Id.* On July 9, 2015, Urquhart was promoted to Revenue Examiner. (Doc. 39-4) at 74.

The undersigned will examine whether Plaintiff has presented sufficient evidence to survive summary judgment on her age retaliation and her disability retaliation claim, in turn.

### 1. ADEA Retaliation Claim

As to Plaintiff's ADEA retaliation claim, the evidence shows that, at the time she made the decision to promote Jones and Vines to the Revenue Examiner positions, Comer

---

[7] It does not appear that Plaintiff complained of disability discrimination in her application for Revenue Examiner or in her interview for the position.

knew about Plaintiff's age discrimination complaints that were presented in her job application and during her job interview. The time between Plaintiff's interview and Comer's promotion decision was four days. For the purpose of summary judgment, the undersigned finds that Comer's knowledge, coupled with the close temporal proximity between Plaintiff's protected activity and the adverse employment action, satisfy but-for causation for Plaintiff's ADEA retaliation claim. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (holding that, where a decision-maker becomes aware of protected conduct, a close temporal proximity between the decision-maker's acquisition of that knowledge and an adverse employment action will generally be enough to create a factual issue on the causation element).

As Plaintiff has set forth a prima facie case of age retaliation, the burden shifts to Defendant to produce a legitimate, non-discriminatory reason for its decision not to promote Plaintiff. The undersigned has previously concluded that Defendant has met that burden. Further, the undersigned has found that a reasonable juror could conclude that Defendant's proffered reason is pretextual. Accordingly, the undersigned finds that Defendant's Motion for Summary Judgment as to Plaintiff's ADEA Retaliation Claim should be denied.

### 2. ADA and Title VII Retaliation Claim

As to Plaintiff's ADA and Title VII retaliation claim, there is no clear evidence that Comer knew about Plaintiff's complaints of disability discrimination at the time she promoted Jones, Vines, and/or Urquhart to Revenue Examiner positions. Notably, Plaintiff did not voice complaints of disability discrimination in her job application, and Comer does

not recall Plaintiff complaining of disability discrimination during the job interview. However, Plaintiff did voice complaints of disability discrimination when she filed her June 17, 2015, EEOC complaint and when she sent her June 22, 2015, letter to Defendant. Urquhart was promoted on July 9, 2015, which was only twenty-two days after Plaintiff filed the EEOC complaint and a mere seventeen days after Plaintiff sent Defendant her letter. Comer testified that she was unsure when she learned that Plaintiff had filed an EEOC complaint and had sent the letter. (Doc. 39-4) at 27 (Tr:104:11-18 – "Did anyone contact you in response to [Plaintiff's June 22nd] letter? . . . I cannot recall. I knew that [Plaintiff] had an EEOC discrimination and maybe even some that had been ongoing from previous years, but I don't know exactly when or if I was notified that this had taken place."). She did testify, nonetheless, that she met with Plaintiff on July 1, 2019, and it is at least plausible to conclude that they spoke about Plaintiff's concerns regarding discrimination during that meeting. (Doc. 39-4) at 18 (Tr. 67:21-68:16 – "I had spoken with [Plaintiff] on 7/1 of 2015 . . . concerning the recent promotions . . . and she was upset that she had not received a revenue examiner position. When I asked if she could go out into the field daily as the job requires, she responded that she could not, but that another position needed to be created for her to be promoted[.]").

The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecomm.*, Inc., 231 F.3d 791, 799 (11th Cir. 2000) (citing *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000); *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 934 (11th Cir.

1995) ("Proximity in time is sufficient to raise an inference of causation."). "However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart*, 231 F.3d at 799 (citing *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1355-56 (11th Cir. 1999)).

Here, the Court does not have unrebutted evidence that Comer did not know of Plaintiff's disability discrimination complaints. At best, the evidence shows that Comer is unsure when she learned of Plaintiff's disability complaints. Comer's uncertainty does not trigger the Court's application of the exception to the rule. Therefore, construing the evidence in the light most favorable to Plaintiff, the undersigned finds—for the purpose of summary judgment—that Plaintiff has established but-for causation based upon temporal proximity, which has not been overcome by undisputed testimony that Comer did not know of Plaintiff's protected activity at the time she made the promotion decision. Accordingly, Plaintiff has established a prima facie case of ADA and Title VII retaliation.

As Plaintiff has set forth a prima facie case of disability retaliation, the burden shifts to Defendant to produce a legitimate, non-discriminatory reason for its decision not to promote Plaintiff. The undersigned has previously concluded that Defendant has met that burden. Further, the undersigned has found that a reasonable juror could conclude that Defendant's proffered reason is pretextual. Accordingly, the undersigned finds that Defendant's Motion for Summary Judgment as to Plaintiff's ADA and Title VII Retaliation Claim should be denied.

## VI.    CONCLUSION

For the reasons stated above, it is

ORDERED that Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part. It is GRANTED as to Plaintiff's ADEA Discrimination Claim (Count II). It is DENIED as to Plaintiff's ADA Discrimination Claim (Count I); Plaintiff's ADA and Title VII Retaliation Claim (Count III); and Plaintiff's ADEA Retaliation Claim (Count IV).

Done this 20th day of September, 2019.

/s/ Stephen M. Doyle
UNITED STATES MAGISTRATE JUDGE